PEOPLE v LYTAL

Docket No. 64936. Argued March 4, 1981 (Calendar No. 8).—Decided
    December 23, 1982. Rehearing denied 417 Mich 1105.

David Lytal was convicted by a jury in the Saginaw Circuit
    Court, Gary R. McDonald, J., of possession of a controlled
    substance with intent to deliver. The Court of Appeals, Allen,
    P.J., and V. J. Brennan and MacKenzie, JJ., affirmed (Docket
    No. 78-3013). The defendant appeals, asserting several errors in
    the admission of evidence.

    In an opinion by Justice Levin, joined by Chief Justice
    Fitzgerald and Justices Kavanagh, Williams, Coleman, and
    Ryan, the Supreme Court held:

    A defendant is entitled to know before he testifies whether
    evidence of a prior conviction may be introduced to impeach
    him. The trial court may not reserve its ruling on whether the
    record of the conviction may be offered until after he has
    testified. Testimony by an accomplice who is not indorsed on
    the information as a witness may not be admitted, nor may
    evidence of an accomplice's conviction because of his role in the
    criminal enterprise be admitted.

    1. Whether evidence of a defendant's prior conviction is to be
    admitted for purposes of impeachment is largely within the
    discretion of the trial court. However, the defendant is entitled
    to know whether the evidence will be admitted before he takes
    the stand. Failure to insist on a ruling relative to admissibility
    before he testifies does not amount to a waiver of an objection
    to use of the evidence.

    2. The prosecutor must indorse on the information the names
    of all res gestae witnesses, including accomplices that he in-
    tends to call as witnesses. He is not required, however, to call
    or produce an indorsed accomplice. The prosecutor may have
    greater difficulty in producing an accomplice, and, as the time

REFERENCES FOR POINTS IN HEADNOTES
[1] 81 Am Jur 2d, Witnesses § 569.
[2, 3] 41 Am Jur 2d, Indictments and Information §§ 56, 60.
    81 Am Jur 2d, Witnesses § 2.
[4] 81 Am Jur 2d, Witnesses § 522.

of trial approaches or as a result of developments during trial, he should be able to change his mind if it appears to him that the accomplice should not be called.

3. Evidence of the conviction, in a separate trial, of an accomplice because of his role in the criminal enterprise on trial is not admissible to show that no consideration was offered for the testimony of the accomplice as a witness. The prosecutor is not obliged to show that no consideration was offered, but only to disclose any consideration offered to or received by the witness.

4. In this case, the trial court admitted a statement made by the defendant to the police after a lawyer had been appointed for him but not in the presence of the lawyer. The admissibility of the statement turns on whether the statement was initiated by the defendant. Before the defendant is re-tried, he should have an opportunity for an evidentiary hearing to determine whether he initiated the statement.

Reversed and remanded for a new trial.

96 Mich App 140; 292 NW2d 498 (1980) reversed.

1. Criminal Law — Defendant Testifying — Impeachment — Prior Convictions — Discretion.

Use of a defendant's prior conviction for impeachment of the defendant's credibility is within the discretion of the trial court; however, the defendant is entitled to know before he testifies whether, if he does so, the conviction will be admitted, and the trial court may not reserve its ruling until after the defendant has testified; failure of the defendant to insist on such a ruling before testifying does not amount to a waiver of an objection to use of the evidence.

2. Criminal Law — Res Gestae Witnesses — Accomplices — Indorsement and Production of Witnesses.

An exception to the rule that the prosecutor must indorse on the information and produce at trial all res gestae witnesses is that he need not indorse or call as a witness an accomplice, because if the prosecutor calls the accomplice he may not impeach him; however, the reason for the exception does not justify relieving the prosecutor of the obligation to indorse on the information the name of an accomplice that he intends to call.

3. Criminal Law — Res Gestae Witnesses — Accomplices — Indorsement and Production of Witnesses.

A prosecutor is required to indorse on the information the name of an accomplice that he intends to call as a witness, but he is not obliged to produce or call the accomplice if, as trial ap-

proaches, or, as a result of developments during trial, it appears to him that the accomplice should not be called.

4. CRIMINAL LAW — WITNESSES — PLEA BARGAINS — DUTY TO DISCLOSE — CONVICTION OF WITNESS.

The conviction of a witness involved in the criminal enterprise with which a defendant is charged is not admissible as evidence that no consideration was offered for the witness's testimony; a prosecutor is not obliged to show that no consideration was offered to the witness, but only to disclose any consideration offered or received.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, *Patrick M. Meter,* Chief Assistant Prosecuting Attorney, and *Kay F. Pearson,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek)* for the defendant.

LEVIN, J. David Lytal was convicted of four counts of possession with intent to deliver a controlled substance.[1] The Court of Appeals affirmed.[2]

In granting leave to appeal, we directed the parties to include among the issues whether the trial judge erred in allowing: (i) introduction of a prior conviction of Lytal, (ii) unindorsed accomplices to testify, (iii) introduction of evidence that the accomplices were convicted for their roles in the criminal enterprise, and (iv) introduction of a statement made by Lytal to a police officer after appointment of a lawyer to represent Lytal, but not in the presence of the lawyer.

We reverse and remand for a new trial. The judge should not have reserved his ruling on the admissibility of evidence to impeach Lytal's credi-

---

[1] MCL 335.341(1)(b); MSA 18.1070(41)(1)(b).

[2] *People v Lytal,* 96 Mich App 140; 292 NW2d 498 (1980).

bility until after he had testified. Nor should he have allowed the introduction of the testimony of the unindorsed accomplices. Nor should the evidence of the accomplices' convictions have been introduced.

The admissibility of the statement made to the police may turn on whether Lytal "initiated" the conversation. See *Edwards v Arizona*, 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981), and *People v Paintman*, 412 Mich 518; 315 NW2d 418 (1982). The record is not adequately developed on that issue. Before the new trial, that issue shall be further explored in an evidentiary hearing.

I

The controlled substances were stolen during a breaking and entering of a veterinarian's office. The people's evidence tended to show that the thief was Daniel Pabor and that he brought the drugs to Lytal in a cardboard box. Lytal testified that Pabor asked him to hold the drugs until Pabor could sell them and that he refused, but that he did comply with a request to communicate with Louis Diaz and ask Diaz if he would store the drugs for Pabor. Diaz agreed and Lytal drove Pabor to Diaz's residence.

Diaz and Timothy Tackleberry, the unindorsed accomplices, testified that Lytal was involved in the effort to dispose of the drugs at a profit. Evidence that they had been convicted for their roles in the criminal enterprise was introduced at Lytal's trial.

When first arrested, Lytal made a statement in which he acknowledged that Pabor had come to his house with the drugs in a cardboard box. After

a lawyer had been appointed to represent him, he gave a second statement to a police officer who testified at an evidentiary hearing that Lytal had sent a message through his probation officer that he wished to speak with the officer. In the second statement, which was not made in his lawyer's presence, Lytal acknowledged that he had given Pabor a ride to the Diaz residence and had asked Diaz if Pabor could store the drugs there, and also that, at a subsequent time, he had brought over to Diaz some marijuana which Pabor had left at Lytal's home. The judge concluded that the second statement was admissible.

## II

The breaking and entering occurred in August, 1977. Following the presentation of the people's evidence, the prosecutor asked the judge to rule whether Lytal could be impeached by evidence of a February, 1977, conviction of possession with intent to deliver a controlled substance, diazepam.

The prosecutor argued that under the proposed Michigan Rules of Evidence, to go into effect in two weeks, it was within the judge's discretion to admit such evidence to impeach credibility.[3] Lytal's lawyer said that admission of evidence of conviction of a drug offense would erase from the jurors' minds anything that might tend to support Lytal's claim of innocence.

The judge said that he recognized that he had discretion to determine whether the probative value of the evidence outweighed the prejudicial effect, and that he would reserve his ruling be-

---

[3] We intimate no opinion on whether the conviction of possession of diazepam was admissible for this purpose.

cause he thought his decision would depend on Lytal's testimony, should he take the stand.

Lytal testified. The prosecutor renewed his request that the record of Lytal's conviction be admitted for impeachment purposes. Lytal's lawyer objected, and the matter was argued. The judge ruled that the probative value outweighed the prejudicial effect "because the defendant has apparently stated that he cannot read or write, and is not familiar with drugs or bottles, or whatever, and he has denied knowledge that the box contained controlled substances when he saw it.[4] I think that previous experience of the defendant in another drug, of course, is of probative value and does have probative value for the jury to decide." The evidence of the conviction of possession of diazepam was admitted.[5]

In closing argument, the prosecutor said that any person who had pled guilty to possession of an exotic controlled drug, diazepam, "certainly has enough mental awareness of what he has got to know what's controlled or what's illegal".[6] He further argued that the conviction "weighs heavy

[4] Lytal had testified that Pabor described the box as containing a "bunch of goodies" and that he was going to make some money. Pabor opened up the box and showed Lytal some antibiotics. Lytal knew that they were antibiotics because they resembled a pill that his doctor had prescribed for him. He couldn't read the label on the container. He did not know what the contents of the box were. He did not know that the drugs in the box were illegal drugs. Pabor was carrying on his person morphine, which he showed to Lytal. Lytal did not think there was anything in the box like that. He did not go through the box. Even if he had, he would not have been able to read labels because he could not read well enough.

[5] The judge offered to allow Lytal's lawyer, without waiving his objection, to bring out the conviction himself, but his lawyer declined to do so. The prosecutor brought it out.

[6] The prosecutor also said that the prior conviction was not offered as substantive evidence to prove the charge, but to impeach Lytal's credibility.

against him on his credibility when he tries to tell you that he didn't know that there were illegal drugs in there, because he couldn't read the labels."[7]

In his rebuttal argument, the prosecutor suggested that Lytal was continuing on the course of conduct which led to his conviction just a year ago. "The man was convicted of intent to deliver, and he is still doing it."

In instructing the jury, the judge said that the evidence of the defendant's prior conviction was to be considered by the jury only insofar as it may affect his credibility, believability, as a witness. It was not to be considered as evidence of his guilt.

This Court has ruled that where a record of a past conviction is offered to impeach credibility the judge may not reserve his ruling until after the defendant has testified. The defendant is entitled to know before he takes the stand whether, if he does so, the prior record can be used for impeachment. *People v Hayes,* 410 Mich 422; 301 NW2d 828 (1981).

We disagree with the Court of Appeals that because Lytal's lawyer did not insist upon a ruling before Lytal took the stand Lytal should be deemed to have waived his objection to the use of the prior conviction. The admissibility of a record of a past conviction is largely within the discretion of the trial judge. Lytal's lawyer would understandably not wish to insist on a ruling at a time earlier than the judge desired to rule lest the lawyer's persistence result in a less favorable rul-

---

[7] Lytal had testified that he did not know that the bottles in the box contained controlled substances. See fn 4.

ing than he hoped to obtain by forbearing until the judge was prepared to rule.

In ruling against Lytal, the judge declared that the evidence was admissible to impeach Lytal's *testimony* that he could not read the labels on the bottles and did not know what was in the bottles in the box. The prosecutor had not sought to have the evidence admitted to impeach Lytal's testimony and, thus, Lytal's lawyer did not have the opportunity, before the judge ruled, to argue that the prior conviction was not probative of Lytal's knowledge of what was contained in the bottles in the box.

The Court did not give a cautionary instruction either at the time the evidence of the conviction was admitted or before the case went to the jury regarding the limited use that may be made of evidence of a prior conviction offered to impeach testimony, presumably because the evidence was offered to impeach credibility and not testimony.

### III

The rule is well established that the prosecutor is required to indorse on the information the names of all res gestae witnesses and that he is further obliged to produce them at the trial.[8] The prosecutor is not, however, required, as an exception to that rule, to indorse the name of or to call as a witness an accomplice who is a res gestae witness whom, if called, he may not impeach.

[8] See MCL 767.40; MSA 28.980; *People v Wilson,* 397 Mich 76; 243 NW2d 257 (1976); *People v Smith,* 257 Mich 319; 241 NW 186 (1932); *People v Blue,* 255 Mich 675; 239 NW 361 (1931), and *People v Quick,* 58 Mich 321; 25 NW 302 (1885).

*People v White,* 401 Mich 482; 257 NW2d 912 (1977).[9]

We agree with the Court of Appeals in *People v Gawthrop,* 106 Mich App 722; 308 NW2d 621 (1981), that that Court had erred in deciding this issue in the instant case.[10] The reason for the exception does not justify relieving the prosecutor of the obligation to indorse on the information the name of an accomplice that he intends to call. The defendant's need for notice in advance of trial of the names of witnesses that the prosecutor intends to call is no less in the case of an accomplice than any other witness. There would be no possible prejudice to the prosecutor in simply indorsing the name of an accomplice that he intends to call.

It is argued that if the prosecutor is required to indorse the name of an accomplice he would then be obliged to produce him at the trial and call him as a witness. In holding that the prosecutor is required to indorse the name of an accomplice that he intends to call, we do not oblige the prosecutor to produce at the trial or to call the accomplice as a witness. The prosecutor may have greater difficulty in producing an accomplice than other witnesses and, as he approaches the time of trial or, indeed, as the result of developments during trial, he should be able to change his mind about calling the accomplice as a witness if it appears to him that the accomplice should not 'be called. We conclude that, while the prosecutor is required to

[9] See *People v Raider,* 256 Mich 131; 239 NW 387 (1931).

[10] We intimate no opinion concerning the view expressed by Judge T. M. BURNS who would hold that the prosecutor is required to indorse the names of all witnesses known to him, including an accomplice, whether or not he intends to call the accomplice as a witness, but that he need not call as a witness a person who is an accomplice.

indorse the name of an accomplice that he intends to call, he is not required to produce or call an accomplice.

Before the new trial in the instant case, the prosecutor should file an amended information indorsing the names of the accomplice witnesses he intends to call.

## IV

It is an established rule of law that the conviction of another person[11] involved in the criminal enterprise is not admissible at defendant's separate trial.[12] The prosecutor defends the admission of this evidence on the ground that under the rule of *People v Atkins,* 397 Mich 163; 243 NW2d 292 (1976), he was obliged to show the nature of any consideration offered for the testimony of Diaz and Tackleberry.

Diaz and Tackleberry testified, however, that no promises were made to them—there was no consideration.

The prosecutor is not obliged to show that no consideration was offered for a witness's testimony or, indeed, whether the witness, if charged and if an accomplice, was convicted or acquitted. The prosecutor is only obliged to disclose any consideration offered to or received by the witness. That can be done without adverting to whether the witness was, if charged, convicted.

---

[11] Diaz and Tackleberry were also convicted of narcotics and other offenses in respect to the criminal enterprise for which Lytal was charged; Diaz of possession with intent to deliver phenobarbital, and Tackleberry of possessing a controlled substance (not described on the record) and larceny.

[12] *People v Crawl,* 401 Mich 1, 33; 257 NW2d 86 (1977) (LEVIN, J.).

## V

Before he was arrested, Lytal appeared at the police station and stated that he wished to make a statement that he was not involved in the breaking and entering of the veterinarian's office. Lytal was given *Miranda* warnings by an officer, made a statement, and was then arrested. Subsequently a lawyer was appointed to represent him. Still later, another officer, who was in charge of the investigation, sought to conduct a further interrogation and Lytal refused. Four days later, that officer reapproached Lytal and obtained a second statement from him. Lytal's lawyer was not present when this statement was made.

At the evidentiary hearing, the officer testified that he approached Lytal because he understood from Lytal's probation officer that Lytal wished to speak to him. Lytal said he did not recall such a conversation with the probation officer but that it could have occurred. The judge found that Lytal had initiated the conversation and that the second statement was admissible and had not been obtained in violation of Lytal's *Miranda* rights.

After the evidentiary hearing, the United States Supreme Court ruled in *Edwards v Arizona, supra,* that it is a violation of the holding in *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), to interrogate a defendant who is represented by a lawyer without the presence of his lawyer except where the defendant initiates the further discussion. In *People v Paintman, supra,* this Court reversed convictions and remanded for a new trial at which statements obtained without the requested assistance of counsel would be excluded.

*Edwards* and *Paintman* have made the question whether Lytal initiated the second interview critical. Before the new trial, Lytal should have the opportunity to have a further evidentiary hearing at which the probation officer may be called to determine whether he did in fact tell the officer that Lytal wished to see him and how the probation officer came to believe that such was Lytal's desire.[13]

Reversed and remanded for a new trial.

FITZGERALD, C.J., and KAVANAGH, WILLIAMS, COLEMAN, and RYAN, JJ., concurred with LEVIN, J.

RILEY, J., took no part in the decision of this case.

---

[13] Did the probation officer have any communication with the police officer or another officer working on the case before he spoke to Lytal? Did the probation officer first raise the question of further communication with the police or did Lytal? In a word, was it Lytal or the police officer or the probation officer who initiated the interview which led to the second statement?